# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 15, 2026

Lyle W. Cayce
Clerk

———————

No. 25-60198

———————

Cuevas Machine Company,

*Plaintiff—Appellant*,

*versus*

Calgon Carbon Corporation.

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:24-CV-114

———————————————————

Before Elrod, *Chief Judge*, and Smith and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

This case concerns the requirements for the creation of a valid construction lien under Mississippi law. Cuevas Machine Company sued Calgon Carbon Corporation seeking to foreclose on two construction liens. The district court dismissed Cuevas's complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) after making an *Erie* guess that Cuevas's liens did not comply with Miss. Code Ann. § 85-7-405(1)(b) and were therefore unenforceable. This appeal followed.

No. 25-60198

It is unclear from state precedent whether the Mississippi Supreme Court would interpret the relevant lien statute flexibly or in strict accordance with its terms. More precisely, we remain uncertain as to whether a lienor may establish the "last date" on which labor, services, or materials were provided—as required to create a valid construction lien—by attaching invoices that do not clearly identify such a "last date." To avoid misapplying the state's construction lien statute, we certify the issue to the Mississippi Supreme Court.

## I.

In May 2022, Cuevas Machine Company subcontracted with O'Neal Constructors, a general contractor, to perform fabrication and machining services at a filtration plant owned by Calgon Carbon Corporation in Hancock County, Mississippi. Under the subcontract's "pay-when-paid" clause, O'Neal was bound to pay Cuevas for its services once Calgon paid O'Neal. By June 2023, O'Neal had stopped paying Cuevas, alleging that Calgon had failed to pay O'Neal for its work. Despite the lack of payment, Cuevas continued to perform the requested work at the Calgon plant.

In October 2023, Cuevas timely recorded two separate construction liens against the Calgon property improved by Cuevas's work. The two liens are for $763,245 and $471,661, totaling roughly $1.23 million. The liens themselves do not explicitly state the "last date [that] labor, services or materials were supplied to the premises"—a requirement to create an "effective or enforceable" construction lien. MISS. CODE ANN. § 85-7-405(1)(b). Instead, Cuevas attached dated invoices to the two liens stating what work was performed and the amount owed for each part of Cuevas's work. But it is unclear from the invoices themselves whether the dates listed reflect the dates that particular services were provided, the dates

on which Cuevas generated the invoices, or some other dates relevant to Cuevas's accounting practices.

Cuevas initially sued Calgon in Mississippi state court to foreclose on its liens. After removing the case to federal court, Calgon moved to dismiss under Rule 12(b)(6), contending that the liens did not comply with the requirements of § 85-7-405(1)(b), rendering them unenforceable. The district court granted the motion and dismissed Cuevas's complaint with prejudice. In its order, the district court noted the absence of Mississippi precedent on this issue. The court then made an *Erie* guess[1] that the liens were unenforceable because (1) the lien documents themselves did not specify the "last date [that] labor, services or materials were supplied to the premises," *id.* § 85-7-405(1)(b), and (2) the attached invoices did not specify the relevant dates clearly enough to render the liens substantially compliant with state law. Cuevas appealed.

## II.

After reviewing the district court's decision and the relevant sources of state law, we are uncertain whether the liens recorded by Cuevas comply with state law such that they may properly be enforced. To resolve that uncertainty, it is most prudent to certify the question to the Mississippi Supreme Court.

### A.

We review dismissal under Rule 12(b)(6) *de novo*, "accept[ing] all facts in the complaint as true" and construing them in the light most favorable to the plaintiff. *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024). We do not accept a plaintiff's "unwarranted factual inferences" or

---

[1] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

"legal conclusions." *Id.* We likewise review a district court's *Erie* guess *de novo. Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 493 (5th Cir. 2023).

In this diversity case, Mississippi substantive law controls. *Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 259 (5th Cir. 2010). Thus, we first "examine Mississippi law to determine whether any final decisions of the Mississippi Supreme Court are dispositive." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 392 (5th Cir. 2009). If "there is no apposite decision, [we] must forecast how the Mississippi Supreme Court would rule." *Id.* In making this prediction, "we consider many of the same sources we use when guessing the law of other jurisdictions: decisions and reasoning of the state's courts; general rules of [state law], such as those governing statutory interpretation; and secondary sources like treatises." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850–51 (5th Cir. 2019). We "may look to the decisions of intermediate appellate state courts for guidance" as well. *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

The Mississippi Supreme Court has explained that, where "the words of a statute are clear and unambiguous," the court "applies the plain meaning of the statute and refrains from using principles of statutory construction." *Am. Tower Asset Sub, L.L.C. v. Marshall Cnty.*, 324 So. 3d 300, 302 (Miss. 2021). "But if the statute is ambiguous or silent on a specific issue, statutory interpretation is appropriate, and the Court must 'ascertain the intent of the legislature from the statute as a whole and from the language used therein.'" *Id.* (quoting *In re Guardianship of Duckett*, 991 So. 2d 1165, 1181–82 (Miss. 2008)).

The Mississippi construction lien statute states that a construction lien "must be created and declared in accordance with the [enumerated] provisions, and on failure of any of them the lien shall not be effective or

enforceable." MISS. CODE ANN. § 85-7-405(1). After delineating various substantive requirements and filing procedures, § 85-7-405(1) supplies a template for a compliant lien:

> . . . . The claim shall be *in substance* as follows:
>
> A.B., a mechanic, contractor, subcontractor, materialman, machinist, manufacturer, registered architect, registered forester, registered land surveyor, registered professional engineer, or other person (as the case may be) claims a lien in the amount of (*specify the amount claimed*) on the building, structure, house, factory, mill, machinery, or railroad (as the case may be) and the premises or real estate on which it is erected or built, of C.D. (describing the house, premises, real estate, or railroad), for satisfaction of a claim which became due on (*specify the date the claim was due, which is the same as the last date the labor, services or materials were supplied to the premises*) for work performed or labor, services provided (or whatever the claim may be).

*Id.* § 85-7-405(1)(b) (emphasis added). Thus, lienors have some flexibility in filing a lien, so long as it complies "in substance" with the lien statute. But there are some elements (including the "amount claimed" and "last date [that] labor, services or materials were supplied to the premises") that lienors must "specify" for a lien to be enforceable. *Id.*

The Mississippi Supreme Court has not addressed whether the information required to be included in a valid lien may be supplied by reference to incorporated attachments as opposed to being set forth in the body of the lien itself. The statute's text, instructing that a lien must "in substance" include certain elements, indicates that the content of a lien—rather than its form—determines its validity, such that information included via attachments could bring a lien into substantial compliance with § 85-7-405(1), even if the necessary information is not set forth within the four corners of the lien. *Id.*; *cf. United Miss. Bank v. GMAC Mortg. Co.*, 615

So. 2d 1174, 1175–76 (Miss. 1993) (key elements of a deed of trust provided in attachments may be considered part of the deed).

But even assuming that attached invoices may supply the information required for a valid lien by reference, state caselaw is silent on whether an invoice containing an imprecise or ambiguous "date the claim was due" adequately "specifies" such a date pursuant to § 85-7-405(1)(b). The current lien statute, including its requirement that a "last date the labor, services or materials were supplied" be "specified," was the product of a major overhaul to Mississippi's lien laws by the state legislature in 2014. Miss. Code Ann. § 85-7-405(1); *see* S.B. 2622, 2014 Leg., Reg. Sess. (Miss. 2014). Thus, little precedent exists interpreting the statute's current language or demarking how flexibly we may read its requirements. Absent clear state precedent instructing otherwise, we do not lightly dilute the exacting requirements that the legislature has expressly added. *See Saul v. Jenkins*, 963 So. 2d 552, 554 (Miss. 2007) ("In construing a statute, we seek the intention of the Legislature and adopt that interpretation which will reflect the intended meaning of the Legislature.").

The cases discussed by the parties and the district court supply little clarity. In the sole Mississippi Supreme Court case interpreting the current version of § 85-7-405(1)(b), that court interpreted strictly the requirement that work be "performed" within 90 days of a lien filing. *See Land Holdings I, L.L.C. v. GSI Servs., L.L.C.*, 265 So. 3d 147, 150–51 (Miss. 2019). But *Land Holdings* considered only the *accuracy* of a lien's listed date and the lien's timeliness; there was no question that the underlying lien contained all of the required elements. *Id.* at 151. Similarly, in *Jones Supply Co. v. Ishee*, the Mississippi Supreme Court addressed the statutory requirements for notice to a lienee of a lien's completion, holding that "[s]tatutory prerequisites . . . must be strictly complied with for the lienor to gain the benefits offered by statute." *Jones Supply Co. v. Ishee*, 163 So. 2d 470, 472 (Miss. 1964). But

the reasoning of *Jones Supply* rests on the need to protect lienees through proper notice of a lien, an inverse concern from validating the interests of lienors in a lien's initial creation. *See id.* Other cases cover inapposite statutory grounds and simply are irrelevant to our analysis. *See KD Oak Grove, L.L.C. v. Warren & Warren Asphalt Paving, L.L.C.*, 324 So. 3d 1134, 1136–37 (Miss. 2021) (addressing the provision of litigation notices concurrent with foreclosure on a lien); *Strauss v. Baley*, 58 Miss. 131, 136–38 (1880) (concerning the priority of landlord liens over commercial liens).

Cuevas urges that examination of the "decision and reasoning of [Mississippi's] courts" reveals a pattern of flexibly applying lien requirements with a bias toward validating liens. But Mississippi caselaw interpreting the lien laws evinces more contradiction than it resolves. It is true that older precedents suggest that lien statutes should be liberally construed in order to validate the liens. *See Chancellor v. Melvin*, 52 So. 2d 360, 364 (Miss. 1951) (A mechanics' lien statute "should be construed liberally to effectuate its purposes[.]"); *Morris v. Shryock & Rowland*, 50 Miss. 590, 599 (1874) ("[A]ll reasonable construction should be in favor of maintaining the lien."); *Sharpe v. Spengler*, 48 Miss. 360, 363 (1873) ("The statute regulating [mechanics' liens] is liberally construed for the ends of justice[.]"); *see also In re Purvis*, 293 F. 102, 104 (S.D. Miss. 1923) (HOLMES, J.) (Mississippi lien statutes are "liberally construed in favor of mechanics and materialmen[.]").

However, an alternative line of cases instructs that construction liens are statutory creations that must be created and enforced precisely in line with statutory requirements. *See Wortmann & Mann, Inc. v. Frierson Bldg. Supply Co.*, 184 So. 2d 857, 859 (Miss. 1966) (quoting 36 AM. JUR. MECHANICS' LIENS § 124 (1941)) ("Inasmuch as mechanics' liens are purely statutory, they must show upon their face a compliance with all the statutory requisites to their validity. They are inchoate until completed or

perfected by compliance with the statute[.]"); *Jones Supply*, 163 So. 2d at 472 ("[Construction liens] are creatures of and dependent upon statute. Statutory prerequisities, therefore, must be strictly complied with for the lienor to gain the benefits offered by statute."); *Jones v. Alexander*, 18 Miss. 627, 629 (1848) (Construction liens "can only be claimed by those who bring themselves strictly within [their] provisions."); *see also Federated Mut. Ins. Co. v. McNeal*, 943 So. 2d 658, 660 (Miss. 2006) (holding that a workers' compensation statute creating subrogation liens "must be strictly interpreted according to its mandatory language"). And in the related area of tax sales, recent precedent is unanimous that the requirements of the relevant statutes must be construed strictly. *See, e.g.*, *Hart v. Catoe*, 390 So. 2d 1001 (Miss. 1980); *Cristiana Tr. v. Ciota*, 291 So. 3d 780 (Miss. Ct. App. 2019); *C.F.P. Properties, Inc. v. Roleh, Inc.*, 67 So. 3d 575 (Miss. Ct. App. 2010); *Lawrence v. Ranking*, 870 So. 2d 673 (Miss. Ct. App. 2004).

At bottom, neither the plain text of the lien statute nor a thorough examination of Mississippi precedent answers whether Cuevas could satisfy the requirements for an enforceable construction lien with the invoices attached to Cuevas's lien documents. Consequently, we consider whether certification is proper.[2]

**B.**

The validity of Cuevas's lien turns on whether Mississippi's lien statute permits a lienor to "specify the date the claim was due, [*i.e.*,] the last

_____

[2] Cuevas also contests the district court's denial of a hearing to determine the "last date" on which labor, services, or materials were provided, noting that the chancery court had provided such a hearing in *Land Holdings*. *See* 265 So. 3d at 151. But a hearing would not resolve the legal question driving this appeal; even if the correct "last date" were determined, the underlying *validity* of a lien that did not include such a date would still be in question. *See id.* at 150–51 (considering whether a lien's listed date was accurate, not whether the date was adequately specified).

date the labor, services or materials were supplied," MISS. CODE ANN. § 85-7-405(1)(b), using attached invoices that do not plainly state such a date. This question is "determinative of all or part of [this] cause[,] and there are no clear controlling precedents in the decisions of the Mississippi Supreme Court" to guide our analysis. MISS. R. APP. P. 20(a). "Therefore, it is appropriate under state law to [certify] the question." *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015).

In addition to state law considerations, we consider three factors when deciding whether to certify a question: (1) "the closeness of the question and the existence of sufficient sources of state law"; (2) "the degree to which considerations of comity are relevant in light of the particular issue and case to be decided"; and (3) "practical limitations of the certification process," including "delay and [the] possible inability to frame the issue so as to produce a helpful response on the part of the state court." *Stanford ex rel. Phillips v. Brandon Nursing & Rehab. Ctr., L.L.C.*, 160 F.4th 118, 122–23 (5th Cir. 2025) (quoting *Swindol*, 805 F.3d at 522).

All three factors favor certification. First, this is a narrow, yet important, question of state law not readily answered by precedent or statutory text. And what precedent there is largely predates the 2014 amendments, which added the lien requirements at issue. Thus, "an *Erie* guess in these circumstances would be a leap into the dark." *Johnson v. Miller*, 98 F.4th 580, 586 (5th Cir. 2024). Second, the answer to this question will control this case and provide guidance on a legal question with significant economic impact (including the seven-figure lien involved here). Last, the Mississippi Supreme Court's "construction of its own law will allow us to conclude this case in a manner that is not at risk of inconsistency with any later determination by that court." *Stanford*, 160 F.4th at 123.

No. 25-60198

## III.

In view of the foregoing, we certify the following question of state law to the Supreme Court of Mississippi:

> If a lienor attaches dated invoices to a construction lien, but these invoices do not plainly indicate the "the last date the labor, services or materials were supplied to the premises," do the attachments nonetheless satisfy the requirement that an enforceable lien "specify the date the claim was due" under Miss. Code Ann. § 85-7-405(1)(b)?

Our framing of the certified question does not limit the scope of the Mississippi Supreme Court's response to the precise form of the question.

QUESTION CERTIFIED.