CHAMBERLIN, JUSTICE, DISSENTING:
 

 ¶ 24. Because I believe that the majority opinion goes against good policy and, more importantly, almost seventy years of precedent, I dissent.
 

 ¶ 25. As a preliminary matter, our caselaw is clear that the construction lender is entitled to priority over the materialmen in the amount that went into the construction of the project.
 
 Riley Building Supplies, Inc. v. First Citizens Nat'l Bank
 
 ,
 
 510 So.2d 506
 
 , 508 (Miss. 1987) ;
 
 Guaranty Mortg. Co. of Nashville v. Seitz
 
 ,
 
 367 So.2d 438
 
 , 441-442 (Miss. 1979) ;
 
 First Nat'l Bank of Greenville v. Virden
 
 ,
 
 208 Miss. 679
 
 ,
 
 45 So.2d 268
 
 (1950). Likewise, to the extent any additional funds disbursed did not go into the construction project, in order to maintain priority, the construction lender must show that it used reasonable diligence to see that the funds were used in construction.
 
 Peoples Bank and Trust Co., et al. v. L & T Developers, Inc.
 
 ,
 
 434 So.2d 699
 
 , 707 (Miss. 1983) ;
 
 Deposit Guaranty Nat'l Bank v. E.Q. Smith Plumbing & Heating, Inc.
 
 ,
 
 392 So.2d 208
 
 , 212 (Miss. 1980),
 
 decision clarified
 
 ,
 
 396 So.2d 6
 
 (Miss. 1981) ;
 
 Seitz
 
 ,
 
 367 So.2d at
 
 441 ;
 
 see also
 
 Boackle, K.F.
 
 , Mississippi Real Estate Foreclosure Law
 
 § 4:14 (2d ed. 2017); Jeffery Jackson et al., 6
 
 Mississippi Practice Encyclopedia of Mississippi Law
 
 § 51:30 (2017).
 

 ¶ 26. The main issue is whether the amounts used in the first draw to pay off the existing purchase loan on the land constituted funds that went into construction. The answer is yes, as confirmed by
 cases dating back to 1950. This Court addressed a substantially similar case in
 
 Virden
 
 .
 
 Virden
 
 ,
 
 45 So.2d at 268
 
 . In
 
 Virden
 
 , money was borrowed to purchase lots and construct a residence. The Court held that "only $7,315.76 of the money advanced by the Bank actually went into the
 
 purchase of the lots and the construction of the houses
 
 ."
 

 Id.
 

 at 270
 
 (emphasis added). The trial judge found that the bank had priority for the $7,315.76, and this Court affirmed.
 

 Id.
 

 Further, this Court stated in a footnote that the $7,315.76
 
 actually
 
 went into the project.
 

 Id.
 

 ¶ 27. The
 
 Virden
 
 case is on point and dispositive. Further, other cases have addressed the issue subsequently and confirmed lien priority to include the purchase price of the property.
 
 See
 

 Deposit Guaranty
 
 ,
 
 392 So.2d at 208
 
 (Holding that the bank had lien priority, which included the purchase price). However, the majority states that the holdings in
 
 Virden
 
 and
 
 Deposit Guaranty
 
 hold no weight because the treatment of the purchase money is simply a "recapitulation of trial testimony," as in
 
 Wortman & Mann, Inc. v. Frierson Building Supply Co.
 
 ,
 
 184 So.2d 857
 
 (Miss. 1966). Maj. Op. at ¶ 12. Although the facts are laid out in the recapitulation of trial testimony, both cases have a holding that
 
 speaks on the status of the purchase money
 
 . The
 
 Virden
 
 Court held that "such mortgagee shall have preference only to the extent that its funds actually went into the construction."
 
 Virden
 
 ,
 
 45 So.2d at 271
 
 . The Court then affirmed the trial court, giving the mortgagee preference for $7,315.76, which included the price of the land.
 

 Id.
 

 Similarly, in
 
 Deposit Guaranty
 
 , the Court reversed the trial court. This Court held that the bank had priority, and the liens of the materialmen were extinguished by the foreclosure sale.
 
 Deposit Guar. Nat'l Bank
 
 ,
 
 392 So.2d at 212
 
 . The liens of the materialmen were extinguished because the bank disbursed $42,732 for purchase of the lot and construction, and the foreclosure sale realized only $38,000.
 

 Id.
 

 at 211
 
 ,
 
 decision clarified
 
 ,
 
 396 So.2d at 7
 
 . Simply put, there is no Mississippi case that holds otherwise in similar circumstances, where the lender has made a construction loan that includes the purchase of the property that is still outstanding.
 

 ¶ 28. The logic behind these holdings is clear. We want banks to make construction loans. The bank, in general, is not going to make a construction loan unless its lien has priority. Therefore, it includes funds to pay off the existing mortgage as a part of the construction loan, thus ensuring its priority. In our case, although the bank was the same, Whitney was able to place its construction loan in a superior position by extinguishing the first mortgage. To hold otherwise would stifle such loans unless the purchase-money mortgage holder is willing to subrogate its priority.
 

 ¶ 29. The majority cites two cases which are held forth as supporting the proposition that such funds are not funds that went into construction. Alternatively, they state that it is a fact question subject to an abuse-of-discretion analysis that the chancellor got right in our case. I disagree on both counts.
 

 ¶ 30. The majority cites
 
 Peoples Bank
 
 ,
 
 434 So.2d at 699
 
 , to support its position.
 
 Peoples Bank
 
 is simply not on point and is too dissimilar to our case to control.
 
 Peoples Bank
 
 involved a
 
 separate
 
 loan for the purchase of the property that was
 
 not
 
 a part of the construction loans.
 

 Id.
 

 at 703
 
 .
 
 Peoples Bank
 
 clearly states that at the time of the construction loans, "the lien of the purchase money deed of trust held by L & T Developers, Inc. was prior in right to the liens of each of the three deeds of trust in favor of the construction lenders."
 

 Id.
 

 The main distinguishing feature in
 
 Peoples Bank
 
 is that, shortly after the
 construction loans, the purchase-money mortgage holder signed agreements subordinating its lien to that of the construction lenders.
 

 Id.
 

 In other words, the construction loan liens took priority because the purchase-money mortgage holder agreed to be subordinated to the construction loan liens. The Court went on to grant the materialmen priority over the construction lenders and then placed the construction lenders behind the landowner due to breach of a duty owed the landowner.
 

 Id.
 

 at 713
 
 . The priority between the materialmen and the landowner was not challenged on appeal.
 

 Id.
 

 at 714
 
 . That is simply not our case.
 

 ¶ 31. The majority, likewise, submits
 
 Wortman
 
 ,
 
 184 So.2d 857
 
 in support. It opines that
 
 Wortman
 
 is an example of a case in which the purchase price was not included as funds that went into construction. It appears that the only language that supports this proposition is in the paragraph that reads:
 

 The testimony shows that of the total sum advanced by the Loan Company, only $12,011.69 was actually used as payment for labor and materials that went into the construction of the two residences on lots Nos. 49 and 73. This sum does not include the purchase price of the two lots in the sum of $4,300.
 

 Id.
 

 at 858
 
 . However, this language is merely a recapitulation of the testimony given at the trial-court level. In its analysis, the opinion does not set forth how the purchase money should have been treated.
 

 Id.
 

 at 858-61
 
 . Holding in favor of the lender, the Court found that there was reasonable diligence and a lack of notice by the materialmen.
 

 Id.
 

 at 860-61
 
 . Thus, the case turned on these two issues, and it never addressed the purchase price of the land and whether it was considered part of the construction.
 

 ¶ 32. The majority also deems the issue to be a finding of fact subject to an abuse-of-discretion standard. The issue of whether funds used to pay off the existing purchase loan on the land constitutes money going into the construction project is a question of law. That is not to say that there will not be circumstances where a fact finding is necessary when there is some question as to the purpose of the loan, whether the money was used to pay off the existing mortgage, diversion of the money, etc. The majority states that this dissent advocates adoption of "a bright-line legal rule that the purchase money for the land in a construction loan automatically is a cost of construction." Maj. Op. at ¶ 14. Where the issue is a question of law, my dissent merely upholds our precedent on the status of the purchase money. However, as stated above, where there are circumstances in which fact finding is necessary, my dissent does not hinder that in any way. In this case, however, the issue is one of law. All parties agree that the first draw went to pay off the balance of the existing purchase loan on the land, and no evidence has been submitted that this was anything other than the intention of the parties. Therefore, as all parties agreed to the status of the first draw, unlike the Majority states, I dissent to state that this Court should affirm the findings of the trial court but reverse the application of the law to the facts, as was done in
 
 Deposit Guaranty
 
 (and in
 
 Wortman
 
 on the issue of reasonable diligence).
 

 ¶ 33. The amount used to pay off the existing purchase loan on the land constitutes funds that went into construction. The determination of whether the monies used to pay off the balance of the existing purchase loan on the land is dispositive in that it consumes the entire amount obtained at the foreclosure sale. (The payoff was $966, 872.71 and the foreclosure purchase price was $800,000). Therefore, it is
 not necessary to get to a reasonable-diligence analysis.
 

 ¶ 34. For these reasons, I dissent.
 

 MAXWELL, J., JOINS THIS OPINION.